**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

MAY 30 2012

MATTHEW J. DYKMAN
CLERK

| In the Matter of the Seizure of | ) | |
|---|---|---|
| *(Briefly describe the property to be seized)* | ) | |
| The proceeds, contents and any U.S. currency | ) | Case No. |
| contained in Citibank account 36151409 held by | ) | *12-MR-482* |
| Diamond bank final beneficiary account 0001105080 | ) | |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___United States___ District of

_____New Mexico_____ is subject to forfeiture to the United States of America under _____ U.S.C. §

__See Below__ *(describe the property)*:
18 USC § 1343, 18 USC § 982(a)(2), 28 USC § 2461, 18 USC § 981(a)(1)(C), 18 USC § 981(a)(1)(D)

Citibank Account number 36151409 held by Diamond Bank, bearing Final Beneficiary Diamond Bank Account number 0001105080 and/or Final Beneficiary Name Amolo Anthony

The application is based on these facts:

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Omar Vela, Special Agent U.S. Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 30, 2012

City and state:  Albuquerque, New Mexico

_____
KAREN B. MOLZEN
U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

### Background

1.    I am a Special Agent with the United States Secret Service (USSS), and have been so employed since February 2010.  As a Special Agent, I have received training at the Federal Law Enforcement Training Center, and graduated from the Special Agent Training Class at the USSS Academy.  My duties and responsibilities include investigations into possible violations of federal criminal laws of Title 18 (Money Laundering, Wire Fraud, Access Device Fraud, and other Federal Violations).

2.    In my capacity as a Special Agent, I have conducted and participated in many financial crime investigations, written multiple affidavits in support of search warrants, and participated in the execution of search and seizure warrants.

3.    In the course of my employment with the USSS, I have conducted or been involved in numerous investigations of alleged criminal violations, which have included:  Wire fraud (18 U.S.C. § 1343) and Forfeiture (18 U.S.C. § 981 and 18 U.S.C. § 982).

4.    Through my training and experience, I am familiar with the methods and practices used by individuals and organizations involved in financial crimes and illicit activities that generate large amounts of income.  The methods to generate and hide large amounts of income include, among others:

a. To generate large amounts of income individuals involved in financial crime will solicit individuals to wire large amounts of money through fraudulent online schemes. The themes of these schemes include: online romantic relationships, business ventures, false inheritance, and lottery winnings.

b. Individuals involved in financial crime will place assets in names other than their own or rely on third parties to conduct financial transactions for them to avoid detection of these assets by government agencies;

c. Attempting to conceal the source and legitimize the profits from illegal activity by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, electronic wire transfers, letters of credit, brokerage houses, real estate, shell corporations and business fronts).

5. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable sources.

6. Because this affidavit is made solely to seize a bank account pursuant to 18 U.S.C. § 981 and § 982, I have not included every fact known to me about this investigation.

7. I make this affidavit in support of a warrant to seize the proceeds and contents from the following Citibank account, and used to transfer, conceal, and disguise proceeds derived from wire fraud, pursuant to 18 U.S.C. § 981 and 18 U.S.C. § 982:

> **All funds and monies credited to Citibank account 36151409 held by Diamond Bank, bearing Final Beneficiary Diamond Bank Account 0001105080 and/or Final Beneficiary Name Amolo Anthony**

8. I further make this affidavit in support of a warrant pursuant to 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 2461, directing Citibank to freeze the contents of the account in place and to refuse the withdrawal of any amount from the account by anyone other than the USSS and while any contents of the account are frozen in place to accrue deposits, interest, and dividends, until the USSS directs that the contents of the account be finally liquidated and no contents remain (for no longer than a period of 30 days). Freezing the contents may be appropriate in the event the bank is unable to provide the funds immediately to the Federal Agents and therefore restricts the removal and/or dissipation of the funds by the account holder(s).

## FACTS SUPPORTING PROBABLE CAUSE

9.    On or about May 8, 2012, a U.S. New Mexico Federal Credit Union (US NMFCU) Financial Investigator, Sharon Cole (Ms. Cole), informed USSS SA Nicolas Jonte of possible illegal activity that was occurring at her financial institution.  Ms. Cole advised SA Jonte that US NMFCU member Sharon Sattler (Sattler) was using her savings account (392397) to electronically wire approximately $60,000.00 to Lagos, Nigeria, over a one-year period.  Ms. Cole advised that when she contacted Sattler about the wire transfers to Nigeria, Sattler informed Ms. Cole that she had a business associate in Nigeria and was utilizing her savings account to electronically wire proceeds from their business ventures to her associate's account in Lagos, Nigeria.

10.   On or about May 18, 2012, Ms. Cole telephonically contacted SA Jonte and advised that she had frozen Sattler's account due to potential fraudulent activity.  Ms. Cole stated that she froze Sattler's account after it had received numerous wire deposits of approximately $17,000.00 from multiple individuals. Ms. Cole stated that Sattler telephonically contacted her in regards to her account being frozen.  Sattler advised Ms. Cole that she needed her savings account to be unfrozen so that she could wire proceeds to her business associate in Nigeria. Sattler advised Ms. Cole that her business sold "government

products" and "investments."  Sattler explained that she could provide Ms. Cole with proof that her business was legitimate. Sattler stated that her business was licensed and that she had a Tax Identification Number.  To date, Sattler has not provided the above mentioned documents.

11.  On or about May 18, 2012, SA Jonte telephonically contacted Albuquerque Financial Crimes Task Force (ABQFCTF) Detective Carl Cleland (Det. Cleland) in regards to this investigation.

12.  Between May 18th and 23rd, 2012, using information provided by Ms. Cole, Det. Cleland telephonically contacted several individuals who had wired money to Sattler's account. Each individual interviewed provided a different explanation as to why he/she wired money to Sattler's account at US NMFCU.  Each individual interviewed advised that he/she was specifically instructed to wire money to Sattler's US NMFCU account.  A brief summary of Det. Cleland's interviews is provided below:

    a. On or about May 21, 2012, Det. Cleland telephonically contacted Jean Paul Faubert in San Marcos, CA. Mr. Faubert confirmed that he wired $10,100.00 to Sattler's savings account at US NMFCU.  Mr. Faubert advised that he received an email from a "Willy Camron".  Mr. Faubert stated Camron informed him that an individual in London, England, left Faubert an inheritance of $5.2 million dollars. Mr. Faubert advised that Camron instructed him

to wire $6,100.00 to Sharon Sattler's account at U.S.
NMFCU.  Mr. Faubert said that he was told after he wired
the money to Sattler's account, she would forward his
inheritance money to a bank in London so that he could
claim his $5.2 million dollar inheritance. At the
conclusion of the interview Det. Cleland confirmed that
Mr. Faubert had not received $5.2 million dollars.

b. On or about May 21, 2012, Det. Cleland telephonically
contacted Deborah L. Perdue in Phoenix, AZ.  Ms. Perdue
confirmed that she wired money into Sattler's US NMFCU
savings account. Ms. Perdue advised she received an email
from a "David Lee", who instructed her to wire money to
Sattler's account at US NMFCU to cover the cost of
"documents". Ms. Perdue was told that Sattler would then
forward the money to Nigeria.  Upon confirmation that the
funds were received in Nigeria, Ms. Perdue would receive
an ATM card worth two million dollars.  At the conclusion
of the interview Det. Cleland confirmed that Ms. Perdue
had not received an ATM card worth two million dollars.
In addition, Ms. Purdue provided Det. Cleland with
documentation confirming that she wired $2,100.00 to
Sattler's account (392397) at US NMFCU.

c. On or about May 21, 2012, Det. Cleland telephonically
contacted Donna Teems in Brunswick, GA. Ms. Teems

confirmed that she wired money to Sharon Sattler's US NMFCU savings account. Ms. Teems advised that her online boyfriend sent her a present from another country.  Ms. Teems stated that she was contacted by a security company and was advised that the present was in New York, NY. Ms.  Teems stated that the security company told her that she could come to New York and retrieve the present herself, or pay $1,700.00 to have it mailed to her. Ms. Teems stated she was instructed to wire the money to the account of Sharon Sattler at US NMFCU.  Ms. Teems advised that she was given the following account number 39237. At the conclusion of the interview Det. Cleland confirmed that Ms. Teems had not received her present.

13.  A restraining order may not be sufficient to assure the availability of the account because by their very nature, the funds contained in the account are easily concealed, transferred or otherwise dissipated.

14.  Likewise, a restraining order may not be sufficient to ensure the availability of the account for forfeiture because there is reason to believe that the account is available to Sattler, who cannot reasonably be relied on to abide by an order to maintain the account in substantially the same condition as it is at the present time in order that it will be available for forfeiture.

15.   In addition, a review of financial records revealed that Sattler executes multiple wire transfers a month to Lagos, Nigeria.

16.   On May 23, 2012, SA Jonte seized $20,776.07 from Sattler's account 392397 at US NMFCU based on a federal seizure warrant issued on May 23, 2012.  Almost all of the seized funds can be attributed to amounts wired into the account by individuals such as the ones listed above in paragraph 12.

17.   On or about May 25, 2012, Det. Cleland and I interviewed Sattler at the USSS Albuquerque Resident Office.  Sattler stated she was wiring funds to a Citibank account intended to be received by "Cole Green," her business partner.  Sattler stated that she was unaware that the funds she was wiring from her US NMFCU account to the Citibank account were funds obtained from individuals based on false pretenses. She stated she thought she was conducting legitimate international business, and was receiving funds from people wanting to invest internationally or wanting to purchase products internationally. She appeared to have no knowledge of the false pretenses based upon which individuals had sent money into her US NMFCU account.

18.   During the interview, Sattler provided 9 copies of her wire transfer documents, indicating that the wires she was sending were received by **Diamond Bank Citibank account 36151409 bearing the Final Beneficiary Diamond Bank Account 0001105080 and/or the**

**Final Beneficiary Name "Amolo Anthony".** The most recent electronic wire occurred on 05/03/2012 in the amount of $2,980.00.

19.  During the interview, Sattler called "Cole Green", purportedly the recipient of the wires she was sending.  Her call was answered and Sattler put "Green" on speaker phone so Det. Cleland and I could also hear the conversation, although we did not participate in it.  Sattler told "Green" that she was being investigated for illegal activity.  Sattler was obviously upset about this and wanted reassurance from "Green" that the money she had wired was reaching the intended beneficiary. Initially, "Green" was apprehensive and evasive when addressing Sattler.  He told Sattler that that funds that she had sent were being used for legitimate businesses and asked Sattler when the next wire transfer would occur.  In conclusion, when Sattler asked if "Green" had given her account number to other individuals he admitted that he had.

20.  On or about May 29th, 2012, SA Jonte contacted Citibank investigator Jennifer Ruiz, who was able to confirm that **Diamond Bank Citibank account 36151409 bearing the Final Beneficiary Diamond Bank Account 0001105080 and/or the Final Beneficiary Name Amolo Anthony** did receive electronic wire transfers from Sattler's US NMFCU account.  Ms. Ruiz advised that **Citibank account 36151409** is a corporate account used to facilitate

international wires by Diamond Bank in Lagos, Nigeria.  Ms. Ruiz
explained that when an international wire is received at
Citibank all funds are credited to a corporate bank account with
the final beneficiary's foreign bank account number.  Ms. Ruiz
advised that in this case all funds were credited to Diamond
Bank's Citibank corporate account **36151409** with specific
instructions to deposit all funds into Amolo Anthony's (the
final beneficiary's) Diamond Bank account number **0001105080**. SA
Jonte asked Ms. Ruiz to query the **Citibank account 36151409** for
a wire transfer that was sent by Sattler to Citibank on
03/29/2012 for $2,630.00.  Ms. Ruiz was able to confirm that
**Citibank account 36151409 bearing the Final Beneficiary Diamond
Bank Account 0001105080 and/or the Final Beneficiary Name Amolo
Anthony** was credited $2,630.00.  Ms. Ruiz advised that these
funds were then electronically wired to Lagos, Nigeria.

21.  On or about May 30th, 2012, SA Jonte contacted Citibank's
Vice President/Paralegal Mary B. Mihalik in Citibank's Office of
the General Counsel ICG Litigation & Regulatory in regards to
this case.  Ms. Mihalik advised that it is possible to identify
and seize all wire transfers that are credited to **Diamond Bank's
Citibank account 36151409** in the United States intended for
**Amolo Anthony's Diamond Bank account number 0001105080**, before
the funds are electronically wired to Lagos, Nigeria.  Ms.
Mihalik advised that all funds seized would have to be

identified as **Citibank account 36151409 bearing the Final Beneficiary Diamond Bank Account 0001105080 and/or the Final Beneficiary Name Amolo Anthony.**

### CONCLUSION

WHEREFORE, your affiant respectfully requests that pursuant to 18 U.S.C. § 982(a)(2), and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, allowing criminal forfeiture of proceeds based on 18 U.S.C. 1343, and pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D), allowing civil forfeiture of proceeds based on 18 U.S.C. § 1343, based on the fact that the account contains fungible proceeds which are subject to rapid dissipation, it is hereby requested that Special Agents of the USSS be authorized:

**To effect the seizure of all funds and monies credited to Citibank account number 36151409 at Citibank, 153 & 53rd St., New York, NY 10043, held by Diamond Bank, bearing the Final Beneficiary Diamond Bank Account 0001105080 and/or the Final Beneficiary Name Amolo Anthony.**

**To direct Citibank to freeze these contents of the account in place;**

**To refuse the withdrawal of these funds from Citibank account number 36151409 by anyone other than USSS;**

**To continue to accrue deposits in the account, while these contents of the account are frozen in place, until USSS directs that these contents of the account be finally liquidated and no such contents remain; and/or**

**To liquidate some or all of these contents of the account at one or more times and upon liquidation of any contents to turn over the liquidated amount to USSS.**

Freezing these contents could occur in the event the financial institution is unable to provide the funds immediately to USSS, and therefore restricts the removal and/or dissipation of these funds by the account holder.

I swear that this information is true and correct to the best of my knowledge, information and belief.


Approved by AUSA Cynthia Weisman

Respectfully submitted,

Omar Vela
Special Agent, USSS
Albuquerque, New Mexico


SUBSCRIBED TO AND SWORN BEFORE ME ON THIS

_____ 30th _____ day of _____ May _____, 2012

UNITED STATES MAGISTRATE JUDGE